**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CV-14215-RAR**

**CHECKINGSON SINCLAIR**,

      Petitioner,

v.

**SECRETARY, FLORIDA**
**DEPARTMENT OF CORRECTIONS**,

      Respondent.

_____/

**ORDER DISMISSING IN PART AND DENYING IN PART**
**28 U.S.C. § 2254 HABEAS PETITION**

      **THIS CAUSE** is before the Court on a *pro se* Petition for Writ of Habeas Corpus, filed

pursuant to 28 U.S.C. § 2254, challenging Petitioner's convictions and sentences imposed by the

Nineteenth Judicial Circuit Court in and for St. Lucie County, Florida, in Case No. 2014-CF-

003328A.  *See* Petition [ECF No. 1] ("Pet.").  Respondent filed a Response to the Petition, *see*

Response to Order to Show Cause [ECF No. 8] ("Resp."), and Petitioner filed a Reply to that

Response, *see* Reply [ECF No. 14].  Having carefully reviewed the record and governing law, and

for the reasons set forth below, the Court **DENIES** Grounds Four, Five, and Six of the Petition

and **DISMISSES** the remaining grounds as procedurally defaulted.

**PROCEDURAL HISTORY**

      Petitioner was indicted by a St. Lucie County grand jury on three counts: killing an unborn

child by injury to the mother, in violation of Fla. Stat. § 782.09(1)(a) (Count 1); first-degree murder

with a firearm, in violation of Fla. Stat. § 782.04(1)(a) (Count 2); and tampering with or fabricating

physical evidence, in violation of Fla. Stat. § 918.13(1) (Count 3).  *See* Indictment [ECF No. 10-

1] at 4–5.  The charges in this case stemmed from an altercation between Petitioner and his

pregnant wife (the victim) after Petitioner allegedly discovered that his wife had committed acts of infidelity. *See* Petition to Determine Immunity [ECF No. 10-1] at 153. Petitioner admitted that he had shot and killed the victim, but argued that the Indictment against him should be dismissed under Florida's "Stand Your Ground" statute since he shot the victim in self-defense after she "grabbed a knife and began to chase [Petitioner] around the apartment." *Id.*; *see also* Fla. Stat. § 776.012(2) ("A person is justified in using or threatening to use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm[.]"). After holding a multi-day hearing on the "Stand Your Ground" issue, the trial court found that "the State demonstrated by clear and convincing evidence . . . that it was not necessary for the Defendant to use deadly force to prevent imminent death or great bodily harm to himself" and denied the motion to dismiss. Order Denying Petition to Determine Immunity [ECF No. 10-1] at 217.

On December 7, 2018, a jury found Petitioner guilty of all three counts as charged in the Indictment. *See* Verdict [ECF No. 10-2] at 65–66. The trial court adjudicated Petitioner guilty in accordance with the jury's verdict and sentenced him to two consecutive life sentences on Counts 1 and 2, as well as time-served on Count 3. *See* Judgment and Sentencing Orders [ECF No. 10-2] at 77–85.

Petitioner appealed his convictions and sentences to Florida's Fourth District Court of Appeal ("Fourth DCA"), where he advanced three arguments: (1) the trial court erred in "admitting police statements made during [Petitioner's] interrogation" which indicated that law enforcement believed that Petitioner was guilty, Direct Appeal Initial Brief [ECF No. 10-2] at 115; (2) the trial court erred in "overruling [Petitioner's] objections to the prosecutor's misleading closing argument describing the [heat of passion defense,]" *id.* at 130; and (3) the trial court erred in denying Petitioner's "Stand Your Ground" motion since the "evidence in the present case was

circumstantial and was likewise insufficient to exclude every reasonable hypothesis of self defense[,]" *id.* at 142. On June 18, 2020, the Fourth DCA summarily affirmed the trial court in a *per curiam*, unwritten opinion. *See Sinclair v. State*, 301 So. 3d 220 (Fla. 4th DCA 2020).

On September 1, 2020,[1] Petitioner filed a "Motion for Postconviction Relief" pursuant to Fla. R. Crim. P. 3.850. *See* Postconviction Motion [ECF No. 10-2] at 195–213. He then filed an "Amended Motion for Post-Conviction Relief," *see* Amended Postconviction Motion ("Am. Postconviction Mot.") [ECF No. 10-2] at 219–39, after the state postconviction court dismissed the original Postconviction Motion without prejudice since Petitioner failed to "elaborate as to how the outcome of the trial would have been different absent counsel's alleged ineffectiveness," Order Dismissing Postconviction Motion [ECF No. 10-2] at 216.

The Amended Postconviction Motion raised five ineffective assistance of counsel claims: (1) "counsel was ineffective in failing to strike a weeping jury member who was obviously overwhelmed by the facts of the case and did not have the ability to be fair and impartial," Am. Postconviction Mot. at 223; (2) counsel was ineffective when he failed to properly explain to Petitioner the ramifications of stipulating to the fact that the victim "was the mother of the unborn child[,]" *id.* at 224; (3) counsel was ineffective for failing to file a motion to force the State to "amend its indictment and restructure its charging order of counts 1 and 2," *id.* at 226; (4) counsel was ineffective "in failing to object to the prosecutor['s] improper closing arguments in the stipulation concerning count one[,]" *id.* at 228 (errors in original); and (5) "counsel was ineffective in failing to move for a mistrial," *id.* at 231. The Amended Postconviction Motion also contained a sixth ground for relief, which alleged that Petitioner's right to equal protection was violated

---

[1] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

during jury selection since "all potential African-American jurors were stricken for cause and/or denied the right to participate as jurors after the prosecution had provided shallow race neutral reasons that were vague[.]"  *Id.* at 236.

The state court denied Petitioner's Amended Postconviction Motion in a written order on January 4, 2021.  *See* Order Denying Amended Postconviction Motion [ECF No. 10-2] at 265–68.  The state postconviction court partially "adopted the State's reasoning" and partially provided its own reasoning in denying all six claims.  *See id.* at 266–67.  Petitioner appealed the denial of the Amended Postconviction Motion to the Fourth DCA, but, on August 12, 2021, the Fourth DCA affirmed the state postconviction court in an unwritten opinion.  *See Sinclair v. State*, 323 So. 3d 734 (Fla. 4th DCA 2021).  After denying Petitioner's motion for rehearing, *see* Order Denying Motion for Rehearing [ECF No. 10-2] at 296, the Fourth DCA's mandate issued on October 22, 2021, *see* Postconviction Mandate [ECF No. 10-2] at 298.  The instant Petition was filed on June 3, 2022.  *See* Pet. at 14.  Based on this timeline of events, Respondent concedes that "[t]he instant Petition is timely per the time limit provision of 28 U.S.C. § 2244(d)."  Resp. at 3.

## STANDARD OF REVIEW

### A.  *Review Under 28 U.S.C. § 2254*

"As amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Some of the more restrictive limits are found in § 2254(d).  Under that provision, a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28

U.S.C. § 2254(d). Consequently, § 2254(d) constructs a "highly deferential standard for evaluating state-court rulings" because, after all, this standard "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

"A state court's decision is 'contrary to' federal law if the 'state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Consalvo v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 842, 844 (11th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)) (brackets omitted). A state court's decision qualifies as "an unreasonable application of federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quoting *Williams*, 529 U.S. at 413) (cleaned up). "'If this standard [seems] difficult to meet'—and it is—'that is because it was meant to be.'" *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

By its own plain terms, § 2254(d)'s deferential standard applies only when a claim "was adjudicated on the merits in State court proceedings[.]" 28 U.S.C. § 2254(d); *see also Cullen*, 563 U.S. at 181 ("If an application includes a claim that has been adjudicated on the merits in State court proceedings, § 2254(d), an additional restriction applies."); *Cone v. Bell*, 556 U.S. 449, 472 (2009) ("Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA."). The summary denial of a claim with no articulated reasons presumptively serves as an adjudication on the merits subjecting the claim to § 2254(d)'s additional restrictions. *See Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). This is because federal courts ordinarily presume § 2254(d)'s deferential standard applies when a constitutional

claim has been presented to a state court and denied in that forum. *See, e.g.*, *id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

At the same time, "federal court[s] should 'look through' [an] unexplained decision to the last related state-court decision that *does* provide a relevant rationale" if one exists. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (emphasis added). From there, federal courts "presume that the unexplained decision adopted the same reasoning." *Id.* "[T]he State may rebut [that] presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

In addition to the standard of review imposed by AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court has explained that, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must <u>also</u> satisfy *Brecht*, even if AEDPA applies. *See id.* ("[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original); *see also Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012) ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

### B. *Ineffective Assistance of Counsel Claims*

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88).

Regarding the deficiency prong, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take" during the proceedings. *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). If "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel did not perform deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong, "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## <u>EXHAUSTION</u>

The Petition raises six claims (with Grounds Five and Six containing multiple subclaims). *See generally* Pet. Before the Court can reach the merits of these claims, it must first determine if

the claims have been "exhausted" pursuant to 28 U.S.C. § 2254(b)–(c).  *See Johnson v. Florida*, 32 F.4th 1092, 1096 (11th Cir. 2022) ("Plainly, the purpose of the exhaustion requirement is to afford the state court 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'") (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)).  The exhaustion requirement is met if a petitioner "fairly present[ed] every issue raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral review."  *See Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up).  "If a petitioner fails to 'properly' present [their] claim to the state court—by exhausting [their] claims and complying with the applicable state procedure— prior to bringing [their] federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the claim."  *Id.*  In other words, where a petitioner has not *properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (emphasis added).

Although Respondent has the option to waive an exhaustion defense, *see Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) ("States can waive procedural bar defenses in federal habeas proceedings, including exhaustion.") (cleaned up), it has only conceded that Ground Four is properly exhausted, *see* Resp. at 9 ("The only claim Petitioner raised in his Rule 3.850 motion for postconviction relief was that 'counsel was ineffective in failing to strike a weeping jury member who obviously overwhelmed by the facts of the case and did not have the ability to be fair and impartial violating defendant's right to a fair trial.'  This is the only cognizable and exhausted argument in Claim Four.").  Conversely, it argues that Petitioner has failed to exhaust the five remaining claims.

As to Grounds One, Two, and Three, Respondent avers that all three are "not cognizable in a habeas proceeding" because Petitioner "never alerted the trial court to the federal nature of the claim" and that, in any event, all three grounds involved alleged errors of state law.  *See* Resp. at

7–8.  As for Grounds Five and Six (and their respective subclaims), Respondent contends that Petitioner repeatedly changed the nature of his arguments between the Amended Postconviction Motion, his appeal to the Fourth DCA, and the instant Petition, meaning that he never "fairly presented" one discrete claim "to the state court for consideration."  *See id.* at 9–12.

### A.  Grounds One Through Three are Unexhausted

The Court agrees with Respondent that Grounds One, Two, and Three must be dismissed as procedurally defaulted.  Grounds One through Three of the Petition are identical to the three claims Petitioner raised on direct appeal before the Fourth DCA.  Ground One alleges that the trial court erred by refusing to "fully redact" the recording of Petitioner's interrogation by law enforcement since it allowed the jury to hear "implicit or explicit indications that the police believed that Petitioner was guilty of his wife's death."  Pet. at 4.  Ground Two claims the trial court erred when it overruled counsel's objection "to the prosecutor's misleading closing arguments describing the defense of heat of passion" since it confused the jury and made them less likely to find that the "heat of passion" defense might apply in Petitioner's case.  *Id.* at 6.  Ground Three avers that the trial court erred in denying Petitioner's motion to dismiss based on Florida's "Stand Your Ground" immunity since there was evidence to suggest "that it was Petitioner's wife who first physically attacked him by getting a knife from the kitchen and chasing him around the apartment."  *Id.* at 7.

The Court finds that there are two separate reasons that Grounds One, Two, and Three must be dismissed.  *First*, habeas relief under § 2254 is only available if the petitioner can show that "he is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added); *see also Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("But it is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.").  In other words, this Court cannot grant relief if a petitioner merely

alleges that the state court violated or misapplied state law—no matter how egregious the mistake. *See McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").

As Respondent convincingly argues, the Petitioner's first three claims are firmly grounded in the state court's purported failure to correctly apply state law. *See* Pet. at 4–7. Ground One attacks the trial court's evidentiary ruling allowing certain portions of Petitioner's interrogation to be admitted. *See Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998) ("In habeas corpus proceedings, federal courts generally do not review a state court's admission of evidence."). Similarly, Petitioner's claim in Ground Two that the trial court should have prevented the prosecutor from "improperly" describing the "heat of passion" defense during his closing argument is an invitation for this Court to opine on the proper definition of a state law defense. *See, e.g.*, *Clark v. Dunn*, No. 16-0454-WS-C, 2018 WL 264393, at *19 (S.D. Ala. Jan. 2, 2018) (finding that the proper application of a "heat of passion [defense] . . . were rulings of state law, not federal law"). Finally, the state court's decision to deny a motion to dismiss based on Florida's Stand Your Ground immunity is plainly immune from habeas review since it involves the application and interpretation of a Florida statute <u>and</u> would require the Court to second-guess the state court's factual finding "that it was not necessary for the Defendant to use deadly force[.]" Order Denying Petition to Determine Immunity [ECF No. 10-1] at 217; *see also McGhee v. Sec'y, Dep't of Corr.*, No. 18-cv-2358, 2019 WL 3388232, at *12 (M.D. Fla. July 26, 2019) ("Whether McGhee qualified for immunity from prosecution under Florida's 'Stand Your Ground' law, is a question of state law. Accordingly, McGhee's claim is not cognizable in this federal habeas proceeding.") (internal citations omitted); *Lewis v. Sec'y, Dep't of Corr.*, No. 19-cv-449, 2021 WL 2712367, at *8 (M.D. Fla. July 1, 2021) ("The Court must give deference to the postconviction

court's determination that Lewis could not have shown entitlement to Stand Your Ground immunity under Florida law.").

*Second*, even if Grounds One, Two, and Three could be stated in a way that raised issues of federal or constitutional law, Petitioner failed to exhaust the federal nature of these claims in state court.  In order to properly exhaust a claim, a habeas petitioner "must make the state court aware that the claims asserted present federal constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007).  This can be accomplished when the petitioner "present[s] the state courts with the same claim he urges upon the federal courts," such that a "reasonable reader" would understand that the "legal and factual foundation for each claim" is the same in both state court and federal court.  *Johnson*, 32 F.4th at 1096 (internal quotations omitted).  This plainly did not occur.  In reviewing Petitioner's Initial Brief, which was filed with the Fourth DCA on direct appeal, the Court finds that Petitioner's arguments were <u>exclusively</u> based on state law.  In fact, the Initial Brief <u>never</u> cites the United States Constitution, federal law, or any decision rendered by a federal court anywhere in the country.  *See generally* Direct Appeal Initial Brief [ECF No. 10-2] at 115–44.  Since Petitioner never made "the state court aware" that his claims implicated federal constitutional issues, he plainly failed to exhaust Grounds One, Two, and Three in state court.  *See Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458–59 (11th Cir. 2015) ("[The petitioner] did not cite a single federal case, and relied instead on a panoply of Florida cases discussing the element of premeditation, as defined by state law.  He never mentioned the federal Due Process Clause, or, indeed, any other federal constitutional provision."); *Pearson v. Sec'y, Dep't of Corr.*, 273 F. App'x 847, 850 (11th Cir. 2008) ("Pearson cited exclusively to state cases, and all of his substantive arguments addressed Florida law.  None of the cases he cited were

decided on federal grounds and he did not otherwise indicate that he intended to raise federal claims.").[2]

Although the exhaustion requirement can be excused in two specific circumstances, neither of them apply here.  "Cause and prejudice" requires the petitioner to show that "some objective factor external to the defense impeded the effort to raise the claim properly in the state court[,]" and, had the claim been properly raised, "there is at least a reasonable probability that the result of the proceeding would have been different."  *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017).  The "actual innocence" exception is met when the petitioner provides new evidence showing "it is more likely than not that no reasonable juror would have convicted the petitioner."  *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  However, in both cases, the petitioner has the burden of proving that either one of these exceptions apply.  *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence[.]") (cleaned up).  Petitioner fails to provide any evidence tending to show that he was prevented from raising the federal nature of his claims in state court or that he is actually innocent of the charged

---

[2]  In his Reply, Petitioner argues for the first time that the Court cannot dismiss Grounds One through Three as procedurally defaulted because he "has presented sufficient facts and clear violations of federal, as well [as] state law 'due process violations' under the Sixth and Fourteenth Amendments of the United States Constitution in this habeas proceeding."  Reply at 2.  This argument is unavailing for two reasons.  First, courts cannot and should not consider arguments made for the first time in a Reply.  *See In re Liebman*, 772 F. App'x 839, 840 (11th Cir. 2019) ("We generally do not address arguments made for the first time in a reply brief.").  Second, even if the state law errors amounted to a <u>federal</u> due process violation, Petitioner was still required to raise (and exhaust) the alleged federal nature of these claims in state court.  *See Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

offenses.  *See generally* Pet.; Reply.  Accordingly, the Court **DISMISSES** Grounds One, Two, and Three as unexhausted and procedurally defaulted.[3]

### B. The Court Declines to Determine if Grounds Five and Six are Exhausted

Grounds Five and Six of the Petition are each divided into two subclaims which, in turn, correspond to four of the five ineffective assistance of counsel claims raised in the Amended Postconviction Motion.  *See* Pet. at 10–11.[4]  Respondent argues that each of the subclaims raised in the Petition are different from the claims Petitioner raised in state court, meaning they have not been properly exhausted for habeas review.  *See* Resp. at 9–11.  This argument revolves around the requirement that a habeas petitioner must "fairly present every issue raised in [a] federal petition to the state's highest court, either on direct appeal or on collateral review."  *Mason*, 605 F.3d at 1119.  This "fairly presented" requirement is met if a "reasonable reader" would be able to compare the federal claim with the state-court claim and "understand [that] each claim's particular legal basis and specific factual foundation" is the same.  *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004).  A federal claim that is "adjacent" or "nominally similar" to the claim raised in a state court proceeding "do[es] not make the cut."  *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1158 (11th Cir. 2022).

---

[3]  The Court also does not need to provide Petitioner with the opportunity to try and exhaust Grounds One through Three in state court since "it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default[.]"  *Snowden v. Singletary*, 135 F.3d 732, 736–37 (11th Cir. 1998).  In Florida, claims of trial court error "can only be raised on direct appeal[,]" meaning that Petitioner no longer has a venue in state court to exhaust this claim.  *DeJesus v. Sec'y, Fla, Dep't of Corr.*, No. 20-80190-CIV, 2022 WL 1262093, at *8 (S.D. Fla. Apr. 28, 2022) (citing *Bruno v. State*, 807 So. 2d 55, 63 (Fla. 2001)).

[4]  Petitioner divides Ground Five into "Subclaim Two" and "Subclaim Three," whereas Ground Six contains "Subclaim Four" and "Subclaim Five."  Pet. at 10–11.  This enumeration, while confusing in the context of the Petition itself, is consistent with how Petitioner presented these claims in his Amended Postconviction Motion and in his subsequent appeal to the Fourth DCA.  *See* Am. Postconviction Mot. at 219–39.  For that reason, the Court will refer to the subclaims in the same way they are presented in the Petition.

Having compared the relevant state court pleadings with the Petition, the Court agrees with Respondent that Grounds Five and Six are not verbatim restatements of Petitioner's state court claims.  However, the Court is also concerned that the claims' "legal theory and facts on which they rest" have remained relatively consistent from the Amended Postconviction Motion to now. *Id.* at 1129; *compare* Pet. at 10–11, *with* Am. Postconviction Mot. at 224–34, *and* Postconviction Initial Brief [ECF No. 10-2] at 283–87.  Instead of individually analyzing how each subclaim changed (or not) over time, the Court can "skip over" this unnecessarily cumbersome step and simply consider Grounds Five and Six on the merits.  *See Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011) ("When relief is due to be denied even if claims are not procedurally barred, we can skip over the procedural bar issues, and we have done so in the past.").  In doing so, the Court finds that Grounds Five and Six are due to be denied even under a *de novo* standard of review.  *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can, however, deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review[.]").

## ANALYSIS

The Court must now review the remaining claims—Grounds Four, Five, and Six—on their merits.  Since the procedural posture of the claims are different, the Court will apply a different standard of review to each.  Ground Four, Respondent concedes, was properly exhausted and adjudicated on the merits in state court.  *See* 28 U.S.C. § 2254(d).  Pursuant to § 2254(d), the Court will review the reasonableness of "the last state court to decide a prisoner's federal claim . . . on the merits in a reasoned opinion[,]" *Wilson*, 138 S. Ct. at 1192, which, in this case, is the Fourth DCA's opinion affirming the state postconviction court's Order Denying Amended Postconviction Relief, *see Sinclair*, 323 So. 3d at 734.  Since the Fourth DCA's unwritten opinion did not "provide

a relevant rationale," the Court must then "look-through" that decision and review the reasonableness of the "last related state-court decision that does provide a relevant rationale[,]" *i.e.*, the state postconviction court's order denying the Amended Postconviction Motion. *Wilson*, 138 S. Ct. at 1192. In contrast, the Court will review Grounds Five and Six *de novo* since, by skipping any potential exhaustion issues, it remains unclear if AEDPA's deferential standard applies. *See Berghuis*, 560 U.S. at 390.

### A. Ground Four

Ground Four of the Petition alleges that counsel was ineffective for "failing to challenge for cause an obvious[ly] biased jury member." Pet. at 8. According to Petitioner, this juror "was openly sobbing and weeping" during jury selection and also indicated that she had prior "knowledge of the facts of the case[.]" *Id.* Petitioner claims that that counsel erred in failing to strike this member of the venire for cause or for otherwise preserving an objection for appellate review. *Id.* In response, Respondent avers counsel could not have performed deficiently since "[t]here is absolutely no support for Petitioner's bald assertion that Juror Sotelo was crying at all, much less 'openly sobbing and weeping.'" Resp. at 34. Respondent also notes that Petitioner failed to demonstrate that this juror was "actually biased" against him. *Id.* at 35. The state postconviction court specifically denied this claim on that basis that Petitioner "fail[ed] to demonstrate actual bias on the face of the record in support of a cause challenge." Order Denying Amended Postconviction Motion [ECF No. 10-2] at 266.

The Court is in complete agreement with the Respondent. The Court has reviewed the entire transcript of the trial court's *voir dire* and finds that there is no indication in the record that Juror Sotelo (or any other potential juror) was "openly sobbing and weeping," even though such an obvious and powerful display of emotion would have certainly been noticed by the trial judge, the parties, the court reporter, or any of the other jurors. *See generally* Trial Tr. [ECF No. 11-1]

at 531–764.  In fact, contrary to Petitioner's description of Juror Sotelo as a person so overwhelmed by her emotions that she could not render a fair verdict, the trial transcript shows that Juror Sotelo was engaged during *voir dire* and even gave a humorous response to a question from the prosecutor.  *See, e.g.*, *id.* at 640 ("[Prosecutor:] [C]an anyone else think of any other things that you would think of when you're speeding to that [traffic] light and it goes from green to yellow, what are you thinking about, what are you looking for? . . . And, and Miss ah, Sotelo, you don't think of any of this stuff?  Ms. Sotelo: I lived in Jersey, so no.").

More to the point, it was also reasonable for the state postconviction court to deny the claim—even if Juror Sotelo was "openly sobbing and weeping"—since there is no evidence that Juror Sotelo was "actually biased."  Under Florida law, a defendant who alleges that his trial counsel was ineffective "for failing to raise or preserve a cause challenge" must demonstrate that, because of the failure to exercise a cause challenge, a person "who was actually biased against the defendant sat as a juror."  *Carratelli v. State*, 961 So. 2d 312, 324 (Fla. 2007).  To establish "actual bias," Petitioner must "demonstrate that the juror in question was not impartial" and that "evidence of this bias [is] plain on the face of the record."  *Id.*[5]  Petitioner plainly fails to meet this standard.  Juror Sotelo specifically agreed that she would follow the law as instructed by the trial judge, *see* Trial Tr. [ECF No. 11-1] at 602, agreed that nothing about her line of work (in the healthcare industry) would influence her verdict, *id.* at 605, explained that she knew the State had the full burden of proof, *id.* at 703, and assured defense counsel that her deliberative process would not be affected if the defense did not present even "one piece of evidence," *id.* at 704.  Suffice to say, none of this indicates that Juror Sotelo held a bias against Petitioner.  *Cf. State v. Bright*, 200 So.

---

[5]  A similar standard is applied in this Circuit as well.  *See Rogers v. McMullen*, 673 F.2d 1185, 1189 (11th Cir. 1982) ("[A] criminal defendant who fails to raise a challenge to a juror who is subject to a statutory disqualification until after the jury completes its function and renders a verdict must demonstrate that the juror was actually biased or otherwise fundamentally incompetent.").

3d 710, 741–42 (Fla. 2016) (holding that a juror was not "actually biased" even though "she stated during voir dire that she would think 'a tiny bit' that Bright was hiding something if he did not take the stand"). Quite the contrary, the record suggests that Juror Sotelo was an ideal juror who would follow the trial court's instructions, hold the State to its substantial burden of proof, and respect Petitioner's right to remain silent at trial. *See* Trial Tr. [ECF No. 11-1] at 602–05, 703–05.

Based on the Florida Supreme Court's decision in *Carratelli*, Petitioner cannot demonstrate that Juror Sotelo "was actually biased against [him]"; therefore, he also fails to prove prejudice under *Strickland*. 961 So. 2d at 324.[6] Accordingly, the state courts reasonably found that counsel could not have been ineffective under Florida law. Ground Four is **DENIED**.

### B. Ground Five

Petitioner divides Ground Five into two subclaims, each of which relate to trial counsel's purported failure to challenge the "interlocking offenses" of Counts 1 and 2. *See* Pet. at 10. In Ground Five, Subclaim Two, Petitioner alleges that counsel was deficient for stipulating to the fact that "[Petitioner's] deceased wife was the mother of his unborn child." *Id.* According to Petitioner this stipulation had two devastating effects on his defense: it "relieved the [S]tate of [its] burden of proving that the victim was in fact the mother of the Petitioner's unborn child" and it implied that Petitioner was guilty of Count 2 since Count 1 was an "interlocking offense." *Id.* As for Ground Five, Subclaim Three, Petitioner again relies on his "legally interlocking offense" theory and claims that counsel was ineffective for failing to have the Indictment restructured because "the jury should not have considered each count [Counts 1 and 2] separately." *Id.*

---

[6] Petitioner insists that the existence of "'any reasonable doubt' about a juror's impartiality" is the standard under which the failure to file a cause challenge should be reviewed. Pet. at 8. This interpretation of Florida law is flatly contradicted by *Carratelli* and does not merit further discussion.

Respondent argues that both claims are patently frivolous.  First, it insists that trial counsel's decision to stipulate to the victim being pregnant was not just reasonable, but practically necessary, due to the nature of the State's evidence proving that the victim was pregnant.  *See* Response at 38 ("As articulated by defense counsel, the autopsy images of the Victim's open womb and small fetus were gruesome.").  Second, the Respondent avers that, under Florida law, an Indictment cannot be amended without reconvening the grand jury, and that, in any event, the jury's verdict in finding Petitioner guilty of both Counts 1 and 2 was legal and did not run afoul of the "legally interlocking" principle.  *Id.* at 49–50.

## 1. *Subclaim Two*

The Court agrees with Respondent that Subclaim Two is obviously meritless.  To begin, trial counsel never stipulated to the fact that Petitioner was the biological father of the victim's unborn child—the stipulation was purely limited to an admission that the victim was pregnant at the time of her death.  *See* Trial Tr. [ECF No. 11-1] at 1033 ("[The Court:] Okay, the parties have agreed and stipulated that [the victim] was the mother of an [unborn] child on October the 26th, 2014.").  Regardless, the decision to stipulate to this fact—even though it absolved the State of the burden to prove one of Count 1's elements—was a reasonable (if not crucial) tactic.  The Court must give trial lawyers "the benefit of the doubt for 'heat of the battle' tactical decisions," *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001), and "in some cases a trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt of one of several charges[,]" *Darden v. United States*, 708 F.3d 1225, 1231 (11th Cir. 2013) (quoting *United States v. Swanson*, 943 F.2d 1070, 1075–76 (9th Cir. 1991)).  This presumption of competence is only overcome if the petitioner can show "that no competent counsel would have taken the action that [the petitioner's] counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

A lawyer may have several reasons for stipulating to an offense's element, but perhaps the most common reason is to blunt a prosecutor's overwhelming evidence on that element.  There are two benefits to doing this.  For one, it allows counsel to focus on the elements of the offense where the prosecutor may not be able to meet their burden of proof.  *See Ether v. Dixon*, No. 20-60241-CIV, 2022 WL 1908918, at *22 (S.D. Fla. June 3, 2022) ("Given this overwhelming proof that Ether had taken the money, defense counsel came up with a clever strategy: concede the elements the State had already proven anyway . . . and dispute the element as to which the State could muster only circumstantial proof: Ether's intent."); *Lara v. United States*, No. 14-CV-8003, 2015 WL 5602440, at *6 (N.D. Ala. Sept. 23, 2015) (finding that conceding guilt on one count was a reasonable decision since "the evidence against Lara as to Count Two was overwhelming").  For another, stipulating to an element may heighten the defendant's credibility in front of the jury since "counsel's challenge to other charges [or elements] appea[r] more credible."  *Darden*, 708 F.3d at 1233 (citing *United States v. Thomas*, 417 F.3d 1053, 1055 (9th Cir. 2005)).

There is no doubt in this case that the State could have easily proven that the victim was pregnant at the time she was shot and killed.  The medical examiner testified that he discovered that the victim was pregnant during his autopsy, and the State possessed photographs from the autopsy showing the fetus in the victim's uterus.  *See* Trial Tr. [ECF No. 11-1] at 1007–09.  Petitioner himself also acknowledged that his wife was pregnant at the time he shot her.  *See* Interrogation Tr. [ECF No. 10-1] at 39–40 ("[W]e were expecting . . . she was pregnant again this time, um—she was seven weeks pregnant.").  Clearly, even if counsel had not stipulated to the victim being pregnant, the State could have still easily and conclusively proven that fact.

There is also a second (and even more compelling) reason that counsel stipulated to the victim's pregnancy: to prevent the State from introducing the photographs of the fetus from the autopsy.  Counsel objected to the admission of these photographs because they were, in his words,

"gruesome and inflammatory." Trial Tr. [ECF No. 11-1] at 1014. The prosecutor conceded that the photos had a "gruesome factor" but argued that they were necessary to prove "that [the victim was] pregnant and that there was a baby," which was an element of Count 1. *Id.* at 1016–17. The trial court also acknowledged that the photographs showed blood, organs, and the deceased fetus. *See id.* at 1017–18. To ameliorate the possibility that these visceral photographs would inflame the jury or prejudice Petitioner, the prosecutor and defense counsel agreed to stipulate to the fact that the victim "was the mother of an unborn child" to prevent the admission of the photographs. *Id.* at 1024; *see also id.* at 1031 ("The Court: To avoid the 3 pictures coming in of the cut open body. I don't mean to be gross about it, but that's what we're avoiding here, so that we, the record's clear, is that correct?"). The record also shows that Petitioner fully discussed the issue with his defense counsel and that, after a colloquy with the trial court, agreed to go forward with the stipulation. *See id.* at 1025–31.[7]

Counsel's decision to stipulate to one element of one count was plainly a reasonable decision, as it prevented the State from presenting "gruesome" and "bloody" images of a deceased fetus in the womb of its mother—who was shot and killed by Petitioner—to the jury. *Cf. United States v. Downs-Moses*, 329 F.3d 253, 265 (1st Cir. 2003) (holding that counsel's decision to stipulate to the quantity of cocaine was a reasonable decision which "spared the defendant the spectacle of twenty-eight bales of cocaine on parade before the jury"). The decision to stipulate to these images also had no effect on Petitioner's defense, as the victim being pregnant was irrelevant as to whether Petitioner shot his wife in self-defense. The Court also rejects Petitioner's premise that the stipulation "had a chilling effect of implying guilt in count two" since whether the

---

[7] Counsel and the trial court went above and beyond in consulting Petitioner about the stipulation since "counsel's failure to obtain the defendant's express consent to a strategy of conceding guilt" does not affect the reasonableness of counsel's decision to stipulate to certain facts. *Florida v. Nixon*, 543 U.S. 175, 186–87 (2004).

victim was pregnant is not an element required to prove first-degree murder.  *See* Fla. Stat. §

782.04(1)(a).  In short, defense counsel's decision to stipulate to the fact that the victim was the

mother of an unborn child at the time of her death was a perfectly reasonable strategic decision

and was not ineffective assistance.  *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made

after thorough investigation of law and facts relevant to plausible options are virtually

unchallengeable[.]").

### 2.  *Subclaim Three*

The other subclaim raised in Ground Five relates to counsel's supposed failure to object to

how the State charged Petitioner.  Petitioner alleges that counsel should have objected to the fact

that Counts 1 and 2 of the Indictment are "legally interlocking offenses," meaning that the jury

should not have "considered each count separately."  Pet. at 10.  Respondent contends that an

objection on this ground would be meritless.  Resp. at 49–50.

The "legally interlocking offense" principle does not apply in the instant case.  Whether

two offenses are "legally interlocking" is only relevant in the context of an inconsistent jury

verdict.  In Florida, a verdict can be inconsistent in two ways: a "factually inconsistent verdict" is

allowed under Florida law "because jury verdicts can be the result of lenity and therefore do not

always speak to the guilt or innocence of the defendant[,]" whereas a "legally inconsistent

verdict"—also known as the "'true' inconsistent verdict exception"—is never permitted.  *State v.

Powell*, 674 So. 2d 731, 733 (Fla. 1996).  A jury verdict in Florida is impermissibly inconsistent

if the "verdicts against one defendant on <u>legally interlocking charges</u> are truly inconsistent."  *Id.*

(emphasis added).  Charges are "legally interlocked" when "an acquittal on one count negates a

necessary element for conviction on another count."  *Id.* (quoting *Gonzalez v. State*, 440 So. 2d

514, 515 (Fla. 4th DCA 1983)); *see also, e.g.*, *Brown v. State*, 959 So. 2d 218, 221 (Fla. 2007)

("By finding Brown guilty of a lesser included misdemeanor of the separately charged underlying

felony, the jury effectively acquitted him of the essential felony element of first-degree felony murder.  In other words, an essential element of felony murder was missing by virtue of the jury's other verdict.  Therefore, the verdicts for first-degree felony murder and petit theft are truly inconsistent.").

While the Court is satisfied that Counts 1 and 2 are "legally interlocking offenses[,]" the problem for Petitioner is that this finding has no effect on the legality of his convictions or the sufficiency of the Indictment.  To be guilty of the offense of "killing of an unborn child by injury to the mother," the State must prove, *inter alia*, that the defendant injured the mother and that this injury "would be murder if it resulted in the death of such mother."  Fla. Stat. § 782.09(1); *see also Love v. State*, 450 So. 2d 1191, 1193 (Fla. 4th DCA 1984) ("[T]his statute does not make it a crime to willfully kill an unborn quick child by an act against the mother unless that act would have been murder had the mother died.").  Naturally, if the jury found that Petitioner <u>had not</u> murdered the mother, it would be inconsistent if that same jury found that Petitioner <u>had</u> killed the unborn child by injuring the mother; that is because the jury, if it acquitted Petitioner on the murder charge, implicitly found that Petitioner could not have caused an injury to the mother which resulted in the death of the child.  *See* Fla. Stat. § 782.09(1).  In this hypothetical scenario, Petitioner would be entitled to relief because his conviction on one "legally interlocking" offense would be legally inconsistent with his acquittal on the other "legally interlocking" offense.  *See State v. Cappalo*, 932 So. 2d 331, 334 (Fla. 2d DCA 2006) ("Where a defendant is charged with such legally interlocking offenses and is effectively acquitted of the underlying offense, a guilty verdict on the other offense is an impermissible inconsistent verdict.").

But that's not what happened—the jury found Petitioner guilty of both Count 1 and 2.  *See* Verdict [ECF No. 10-2] at 65–66.  The jury appropriately and logically found that Petitioner had murdered his wife and that, as a result of that murder, her unborn child also died.  These are two

separate offenses with "the commission of the underlying offense" (Count 2) being a "necessary element of the other offense" (Count 1).  *Cappalo*, 932 So. 2d at 334.  Petitioner's argument that legally interlocking offenses cannot be charged in the same Indictment has no basis in Florida law, and, in fact, Florida law's recognition that "legally inconsistent verdicts" may occur is proof positive that charging "legally interlocking offenses" together is a common and acceptable practice.  *See Powell*, 674 So. 2d at 733; *Cappalo*, 932 So. 2d at 334.  Since there was no legal basis for counsel to object to the State's decision to charge Petitioner with the death of the unborn child and the death of the mother, counsel could not have been ineffective for failing to make a futile argument.  *See Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.").[8]

For the foregoing reasons, Ground Five (including Subclaims Two and Three) is **DENIED**.

### C.  *Ground Six*

Ground Six is also comprised of two subclaims, but both are essentially restatements of the same claim.  Here, Petitioner asserts that, during its closing argument, "the state misstated the elements agreed to in the stipulation in count one of the indictment" and "implied that collectively the stipulation establishes guilt," yet counsel still failed to object to the State's allegedly prejudicial missteps.  Pet. at 11.  Petitioner also argues that the prosecutor improperly "denigrated the Petitioner" during closing arguments, and that counsel should have moved for a mistrial on that basis.  *Id.*  Respondent counters that "[t]he State did not misstate the stipulation[,]" and that no other error occurred during closing arguments.  Resp. at 51.

---

[8]  Petitioner also suggests that the State's decision to charge the killing of the unborn child as Count 1 (instead of the murder of the mother) was "confusing" to the jury.  *See* Pet. at 10.  This allegation has no record evidence to support it and is purely rank speculation.  *See Johnson*, 256 F.3d at 1187 ("This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)).

The State did not misrepresent the scope of the stipulation during its closing argument. During his closing, the prosecutor briefly touched upon how the jury should treat the stipulation:

> The last count that the defendant is charged with is killing of an unborn child in the first degree.  There's 4 elements that have to be proven in order for the jury to find a lawful verdict of the defendant guilty.  1, Checkingson Sinclair, the defendant caused an injury to [the victim] and evidence establishes that.  2, <u>and this element was stipulated to by the Defense during the trial, that at the time of the killing [the victim] was the mother of an unborn child</u>.  The Medical Examiner testified to that, <u>Defense has stipulated</u>, that element's been proven beyond a reasonable doubt.  3, [the victim] died from her injuries as a result of a first degree murder upon her.  4, the injury to [the victim] resulted in the death of [the victim's] unborn child.

Trial Tr. [ECF No. 11-1] at 1316–17 (emphasis added).  The prosecutor did not mention the stipulation <u>at any other point</u> in his closing argument.  *See generally id.* at 1312–32, 1363–1409. This brief mention of the stipulation was not improper or misleading.  The parties stipulated to the fact that "[the victim] was the mother of an [unborn] child on October the 26th, 2014."  *Id.* at 1033. The prosecutor's restatement of the stipulation was almost verbatim to how the trial court presented it to the jury.  *Compare id.*, *with id.* at 1317.  The prosecutor also accurately stated that, because the parties stipulated to this fact, the State had met its burden to prove that the victim was pregnant at the time of her death.  *See Brown v. State*, 719 So. 2d 882, 889 (Fla. 1998) ("[T]he defendant's stipulation of convicted felon status satisfies the prosecution's burden of proof for that element of the crime.") (citing *United States v. Hardin*, 139 F.3d 813, 815–16 (11th Cir. 1998)).[9]  The State never distorted what Petitioner stipulated to, nor did it ever suggest that the stipulation, by itself, proved that Petitioner was guilty of Count 1 (or any other count).  Naturally, a motion for a mistrial would have also been unsuccessful under these circumstances.  *See Smith*

---

[9] However, the prosecutor also (correctly) argued that the State had independently proffered evidence from the medical examiner that the victim was pregnant at the time of her death, and that the medical examiner's testimony could have also established that element of the offense without a stipulation.  *See* Trial Tr. [ECF No. 11-1] at 1317.

*v. State*, 866 So. 2d 51, 58 (Fla. 2004) (holding that a mistrial should only be granted "when the error upon which it rests is so prejudicial as to vitiate the entire trial.").[10]   Accordingly, defense counsel was not ineffective since there was no legal basis for him to object (or move for a mistrial) in response to the State's closing argument.  *See Freeman*, 536 F.3d at 1233.  Ground Six is thus **DENIED**.

## EVIDENTIARY HEARING

No evidentiary hearing is warranted in this matter.  *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the [state court] record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, the Court declines to issue a certificate of appealability ("COA").   A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition.  Rather, to pursue an appeal, a petitioner must obtain a COA.  *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To do so, litigants must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  And "[w]here a district court has

---

[10] Although he does not make the same argument in his Petition, Petitioner argued in the Amended Postconviction Motion that the cumulative effect of four comments the prosecutor made during his closing argument "warranted" a motion for mistrial.  *See* Am. Postconviction Motion at 231–32.  Petitioner also admits, however, that his trial counsel dutifully objected to each of these comments, but three of the four objections were overruled by the trial court.  *See id.*; *see also, e.g.*, Trial Tr. [ECF No. 11-1] at 1328, 1366, 1385–86, 1399.  Mindful that Florida law provides prosecutors with "wide latitude in closing arguments[,]" *Merck v. State*, 975 So. 2d 1054, 1061 (Fla. 2007), the Court finds that one partially successful sustained objection is not indicative of an error that vitiated the whole trial, *see id.* ("The Court considers the cumulative effect of objected-to and unobjected-to comments when reviewing whether a defendant received a fair trial.").  Therefore, counsel was also not ineffective for failing to move for a mistrial on this basis.

disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)).

Here, reasonable jurists would not debate the correctness of the Court's procedural ruling dismissing Grounds One, Two, and Three as procedurally defaulted, or the Court's decision to deny Grounds Four, Five, and Six on the merits.  Accordingly, a COA must be denied.

## CONCLUSION

Having carefully reviewed the record and governing law, it is hereby

**ORDERED AND ADJUDGED** that the Petition [ECF No. 1] is **DISMISSED in part** and **DENIED in part**.  Grounds One, Two, and Three are **DISMISSED** as procedurally defaulted. Grounds Four, Five, and Six are **DENIED**.  Any request for a certificate of appealability is **DENIED**, and an evidentiary hearing is **DENIED**.  All deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot.  Accordingly, this case is **CLOSED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 3rd day of November, 2022.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:     Counsel of record

        Checkingson Sinclair
        DC # N60310
        Northwest Florida Reception Center
        Inmate Mail/Parcels
        4455 Sam Mitchell Drive
        Chipley, FL 32428
        PRO SE